[Cite as *State v. Schubert*, 2021-Ohio-1478.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
|     Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 2020 CA 00040 |
| ALAN SCHUBERT | |
|     Defendant-Appellant | O P I N IO N |


CHARACTER OF PROCEEDINGS:    Appeal from the Licking County Court of
Common Pleas, Case No. 2019 CR
00349


JUDGMENT:    Affirmed

DATE OF JUDGMENT ENTRY:    April 28, 2021


APPEARANCES:


For Plaintiff-Appellee    For Defendant-Appellant

WILLIAM C. HAYES    APRIL CAMPBELL
Licking County Prosecutor    46 ½ N. Sandusky Street
    Delaware, Ohio  43015
PAULA M. SAWYERS
Assistant Prosecuting Attorney
20 S. Second Street, Fourth Floor
Newark, Ohio  43055

*Hoffman, J.*

**{¶1}** Defendant-appellant Alan Schubert appeals the judgment entered by the Licking County Common Pleas Court convicting him following his pleas of no contest to two counts of aggravated vehicular homicide (R.C. 2903.06(A)(1)(a)), R.C. 2903.06(A)(2)(a)) and six counts of pandering obscenity involving a minor (R.C. 2907.321(A)(1), (5)), and sentencing him to an aggregate term of incarceration of twelve years.  Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** On June 20, 2018, Appellant was operating a Jeep Grand Cherokee in the southbound lane of State Route 37 in Licking County at about 65-69 miles per hour.  He traveled into the northbound lane, colliding with a 2012 Chrysler 2000.  The driver of the Chrysler was traveling about 38 miles per hour at the point of impact, and attempted to avoid a collision by applying her brakes and pulling to the right side of her lane of travel.  The driver of the Chrysler died as a result of injuries sustained in the collision.  Appellant was injured in the collision, and transported to Grant Medical Center.

**{¶3}** Police obtained a search warrant for Appellant's blood which was collected by the hospital.  His blood tested positive for amphetamine and for methamphetamine.  After receiving the results of the blood test, police obtained a warrant for three cell phones found at the scene of the crash.  While executing the warrant on Appellant's cell phone, the forensic examiner found nude pictures of juvenile females.  Based upon this information, police applied for an additional search warrant to search the phone for child pornography.

**{¶4}** Appellant was indicted by the Licking County Grand Jury with five second-degree felony counts of pandering obscenity involving a minor, one fourth-degree felony

count of pandering obscenity involving a minor, one count of aggravated vehicular homicide as a second degree felony, and one count of aggravated vehicular homicide as a third degree felony.

{¶5}   On October 10, 2019, Appellant filed a motion to suppress, arguing his blood was not drawn and tested in substantial compliance with the Ohio Administrative Code, and the initial search of his phone exceeded the scope of the warrant.   Appellant filed a supplemental motion to suppress on October 15, 2019, arguing his phone was searched prior to police obtaining a warrant, the warrants for the searches of his blood and phone were not supported by probable cause, the affiant for issuance of the warrants usurped the inference-drawing function of the magistrate, the affiant used unreliable information in obtaining the warrant, and the judge was misled by false information in the warrant.   Following an evidentiary hearing, the trial court overruled the motion to suppress.

{¶6}   Appellant entered a plea of no contest to all charges.  He was convicted as charged.  The trial court merged all counts of pandering obscenity of a minor, and merged the two counts of aggravated vehicular homicide.  The trial court sentenced Appellant to four years incarceration for pandering obscenity and to eight years incarceration on aggravated vehicular homicide, to be served consecutively for an aggregate term of twelve years incarceration.  It is from the June 10, 2020 judgment of the Licking County Common Pleas Court Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT SHOULD HAVE GRANTED SCHUBERT'S

MOTION TO SUPPRESS HIS BLOOD TEST RESULTS, BECAUSE THE

STATE FAILED TO PROVE THAT SCHUBERT'S BLOOD TESTS COMPLIED WITH THE ADMINISTRATIVE REQUIREMENTS AND R.C. 4511.19.

II. THE TRIAL COURT ABUSED ITS DISCRETION, ALSO VIOLATING SCHUBERT'S FIFTH AND SIXTH AMENDMENT RIGHTS, BY NOT ALLOWING SCHUBERT TO PRESENT WITNESSES OR ASK QUESTIONS AT THE SUPPRESSION HEARING ABOUT ISSUES PROPERLY RAISED.

III. THE EVIDENCE AGAINST SCHUBERT SHOULD BE REVERSED, BECAUSE AFFIDAVITS SUPPORTING THE SEARCH OF SCHUBERT'S PHONE AND BLOOD DID NOT CONTAIN PROBABLE CAUSE TO SUPPORT THEM. FURTHER, THE WARRANTS WERE OVERBROAD AND NOT SUFFICIENTLY PARTICULAR.

IV. GOOD FAITH EXCEPTION DOES NOT APPLY TO CURE THE INSUFFICIENT SEARCH WARRANTS IN SCHUBERT'S CASE.

I.

**{¶7}** In his first assignment of error, Appellant argues the court erred in failing to suppress the results of his blood test. He argues the trial court was incorrect in finding proof of substantial compliance was not required because the blood was drawn by the hospital, and further the trial court erred in finding the State presented evidence his blood was drawn and tested in substantial compliance with Department of Health regulations in this particular case, as opposed to the hospital's general protocol.

{¶8} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger, supra.* As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S. 690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶9} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility

of witnesses. See *State v. Dunlap,* 73 Ohio St.3d 308, 314, 1995–Ohio–243, 652 N.E.2d 988; *State v. Fanning* , 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

{¶10} R.C. 4511.19(D)(1)(a) provides:

(D)(1)(a) In any criminal prosecution or juvenile court proceeding for a violation of division (A)(1)(a) of this section or for an equivalent offense that is vehicle-related, the result of any test of any blood or urine withdrawn and analyzed at any health care provider, as defined in section 2317.02 of the Revised Code, may be admitted with expert testimony to be considered with any other relevant and competent evidence in determining the guilt or innocence of the defendant.

{¶11} In order to be admitted pursuant to R.C. 4511.19(D)(1)(a), the sample must be both withdrawn and analyzed by a health care provider. *State v. Oliver*, 9th Dist. Summit No. 25162, 2010-Ohio-6306, ¶ 15. In the instant case, the blood sample was withdrawn by a health care provider, but was not analyzed by a health care provider. Therefore, we find the trial court erred in finding the results of Appellant's blood test were admissible with expert testimony pursuant to R.C. 4511.19(D)(1)(a).

{¶12} However, the trial court also found the blood test results to be admissible because the State proved substantial compliance with OAC 3701-53-05.

{¶13} When results of blood tests are challenged in an aggravated-vehicular-homicide prosecution which depends upon proof of an R.C. 4511.19(A) violation, the State must show substantial compliance with R.C. 4511.19(D)(1) and Ohio Administrative

Code Chapter 3701–53 before the test results are admissible. *State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 48. Substantial compliance does not mean strict compliance, and errors which are *de minimis*, defined as "minor procedural deviations," will be excused. *Id.* at ¶49.

**{¶14}** Appellant argues the State failed to prove the blood draw complied with OAC 3701-53-05(B), which requires when collecting a blood sample, an aqueous solution of a non-volatile antiseptic shall be used on the skin, and no alcohol shall be used as a skin antiseptic. The State failed to present the testimony of the person who conducted the blood draw on Appellant; therefore, there is no testimony concerning what type of antiseptic was used on Appellant's skin. However, Dustin Abbott, an expert witness and forensic scientist formerly employed by the Ohio State Highway Patrol crime lab who conducted the drug testing on Appellant's blood sample, testified whether the swab used in the instant case contained alcohol or did not contain alcohol would have no effect on the results of the drug test on Appellant's blood. There was no alcohol detected in Appellant's tests; thus, the only relevant tests in the instant case were the drug tests. As a result, the absence of evidence in this case concerning the type of swab used is a *de minimis* violation which may be excused.

**{¶15}** Appellant argues the State failed to prove the blood was drawn in substantial compliance with OAC 3701-53-05(C), which provides, " Blood shall be drawn with a sterile dry needle into a vacuum container with a solid anticoagulant, or according to the laboratory protocol as written in the laboratory procedure manual based on the type of specimen being tested."

{¶16} Kelly Sims, an employee in the lab at Grant Medical Center, testified Grant Medical Center protocol for collection of blood would require a medic to draw blood from the IV line with a sterile syringe, place them in vials, and initial them. She further testified the preservative in the lavender capped tubes used by the hospital is EDTA. Dustin Abbott testified he is familiar with the industry standards for hospitals in Ohio, and the anticoagulants used in different types of vials. He testified the lavender capped vacutainer tubes in Ohio contain the anticoagulant is EDTA, which is a crystalized or powdered substance placed in the tube in advance. He testified EDTA is added during the manufacturing process and the tube is then vacuum sealed. He testified if the EDTA is removed from the tube, the tube would no longer function and could not be used to draw blood. He identified the tube he tested as having the lavender cap, and personally observed the tube was in normal condition and the blood in the tube was not coagulated. Another analyst in the lab had tested the blood sample for alcohol, and Abbott testified the documentation, presented as State's Exhibit 10 at the suppression hearing, established the tubes were properly sealed when brought to the lab. We find the testimony sufficient to demonstrate substantial compliance with OAC 3701-53-05(C).

{¶17} Lastly, Appellant argues the evidence did not demonstrate substantial compliance with OAC 3701-53-05(F), which requires all blood samples to be refrigerated when not in transit or under examination.

{¶18} Kelly Sims testified her job duties at Grant Medical Center included taking blood products collected in a Level 1 or 2 trauma from the emergency department to the lab. She testified she took the vials of blood in the instant case from the emergency department to the lab, where they were analyzed. She testified the blood vials were then

stored in laboratory refrigerators until they were released to the Ohio State Highway Patrol. Dustin Abbott testified samples are refrigerated in the lab at all times except when they were directly undergoing examination. We find the testimony sufficient to demonstrate substantial compliance with OAC 3701-53-05(F).

{¶19} We find the trial court did not err in finding the State demonstrated substantial compliance with the Ohio Administrative Code, and therefore the trial court did not err in finding the results of the blood drug test to be admissible. The first assignment of error is overruled.

II.

{¶20} In his second assignment of error, Appellant argues the court erred in failing to allow him to present witnesses and cross-examine the State's witnesses concerning false statements made in the affidavits submitted to obtain the search warrants, as well as his allegation police searched his phone prior to obtaining the warrant.

{¶21} In the memorandum in support of his supplemental motion to suppress, Appellant argued statements attributed to paramedics concerning his drug use, which were included in the affidavit supporting the warrant to search his blood, were false. He also argued at the suppression hearing a police report identified two of the phones found at the scene as belonging to Appellant and one to the victim, which suggested police searched Appellant's phone prior to seeking a warrant, and such facts were deliberately excluded from the search warrant affidavit. He attached no affidavits or evidentiary materials to his motion to support his claims of false or misleading statements made in the affidavits.

**{¶22}** In *State v. Khaliq*, 5th Dist. Licking No. 15-CA-64, 2017-Ohio-7136, this Court discussed what a defendant must provide in order to challenge the affidavit submitted by police in order to obtain a search warrant:

Appellant asserts his motion to suppress presented allegations of deliberate falsehood or reckless disregard for the truth. We disagree.

In *State v. Jackson*, Ninth Dist. App. No. 14CA100953, 2015–Ohio–3520, the Ninth District held,

"There is * * * a presumption of validity with respect to the affidavit supporting [a] search warrant." *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. "In *Franks v. Delaware* * * *, the United States Supreme Court squarely addressed the issue of when a defendant, under the Fourth Amendment, is entitled to a hearing to challenge the veracity of the facts set forth in the warrant affidavit after the warrant has been issued and executed." *State v. Roberts*, 62 Ohio St.2d 170, 177, 405 N.E.2d 247 (1980).

"To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their

absence satisfactorily explained. Allegations of negligence or innocent

mistake are insufficient."

*Franks* at 171, 98 S.Ct. 2674.

Moreover, "[e]ven if a defendant makes a sufficient preliminary

showing, a hearing is not required unless, without the allegedly false

statements, the affidavit is unable to support a finding of probable cause."

*State v. Cubic*, 9th Dist. Medina No. 09CA0005–M, 2009–Ohio–5051, 2009

WL 3068751, ¶ 11, *citing Roberts* at 178, 405 N.E.2d 247, quoting Franks

at 171–172, 98 S.Ct. 2674.

Appellant's motion to suppress asserts the affidavit in support of the

search warrant included "untrue" or "limited" statements. Appellant does not

allege deliberate falsehood or reckless disregard for the truth. The motion

was not supported by affidavits or sworn, reliable statements of witnesses;

nor did Appellant explain the failure to attach affidavits or statements of

witnesses. We find the trial court did not error in denying the motion without

granting Appellant an oral hearing.

**{¶23}** *Id.* at ¶¶ 23-25.

**{¶24}** In the instant case, Appellant alleged the affidavit used to obtain the search

warrant for his blood included a representation paramedics responding to the scene told

police Appellant admitted to drug use.  He alleged paramedics at the scene denied

Appellant said anything about drug use.  Appellant did not support his motion by affidavits

or sworn statements of the paramedics, nor did he explain his failure to attach affidavits

of statements of these witnesses.  We find the trial court did not err in denying his motion without giving Appellant an oral hearing on the truth or falsity of these statements.

**{¶25}** Further, we note Appellant filed a post-hearing memorandum with the trial court, and attached an affidavit of one of the paramedics on the scene stating he did not "recall" Appellant stating he had taken "illicit drugs" or consumed alcohol prior to the accident, and if Appellant made any such statements they would have been documented in the patient care report.  The affidavit sets forth the affiant was dispatched to provide mutual aid to the Hebron Fire Department; thus, multiple units were at the scene of the crash.  We note the affidavit used to obtain the warrant for Appellant's blood referred to "paramedics" in plural form, and stated when asked if there were any substances in his system, Appellant stated there were "numerous substances" in his system.  Assuming arguendo if attached to his original motion the affidavit of the paramedic would have entitled Appellant to a *Franks* hearing on the issue, contra to Appellant's argument before this Court, it does not affirmatively establish there are false statements in the affidavit.

**{¶26}** Finally, the trial court did not rely on the statements of the paramedics in considering whether the affidavit was sufficient to support probable cause for the warrant for Appellant's blood.  The trial court specifically stated at the hearing he would accept Appellant's representation he made no statements at the scene as true in evaluating the evidence.  Supp. Tr. 14.  Further, the trial court's judgment entry specifically states, "The defendant was unable to make a statement about how the crash occurred or what would have caused it."   Judgment Entry, June 3, 2020.   Therefore, Appellant has not demonstrated prejudice from the trial court's failure to allow him to cross-examine

witnesses and present testimony concerning the alleged false statements attributed to paramedics in the search warrant affidavit.

**{¶27}** As to Appellant's claim his phone was illegally searched prior to obtaining a warrant, and his claim police mispresented their knowledge of ownership of the cell phones in the affidavit to obtain the warrant, Appellant made nothing more than a conclusory allegation in his supplemental motion to suppress. While at the suppression hearing he argued he believed the phone was searched prior to the warrant because of a statement in a report concerning ownership of the three phones found at the scene, he did not attach this report to his motion in support of this claim, nor has he proffered the report as an attachment to his post-hearing memorandum. We find the trial court did not err in finding his inquiry into the alleged misrepresentation in the warrant to be barred pursuant to *Franks, supra*.

**{¶28}** The second assignment of error is overruled.

III., IV.

**{¶29}** In his third assignment of error, Appellant argues the warrant to search his blood and the two warrants for the search of his phone are not supported by probable cause. In his fourth assignment of error, he argues the searches are not otherwise valid under the good faith doctrine in spite of the lack of probable cause.

**{¶30}** The Fourth Amendment to the United States Constitution and Section 14, Article I, Ohio Constitution, prohibit the government from conducting unreasonable searches and seizures of persons or their property. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *State v. Andrews*, 57 Ohio St.3d 86, 87, 565 N.E.2d 1271 (1991). In determining the sufficiency of probable cause in an affidavit submitted for a

search warrant, a trial judge or magistrate must make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. *State v. George*, 45 Ohio St.3d 325, at paragraph one of the syllabus (1980), *citing Illinois v. Gates*, 462 U.S. 213, 238–239 (1983). As a reviewing court, we must accord great deference to the issuing judge's determination of probable cause. *See George*, at paragraph two of the syllabus. Doubtful or marginal cases should be resolved in favor of upholding the warrant. *Id*. The totality of the circumstances must be examined in determining whether probable cause existed for a search warrant. *Illinois v. Gates, supra*. "Probable cause" means only the probability and not a prima facie showing of criminal activity. *George, supra*, at 644. *See, also, Beck v. Ohio* (1964), 379 U.S. 89 (1964).

{¶31} In *George, supra*, the Ohio Supreme Court held:

From the foregoing language, it is clear that reviewing courts may not substitute their own judgment for that of the issuing magistrate by conducting a de novo determination as to whether the affidavit contains sufficient probable cause upon which the reviewing court would issue the search warrant. On the contrary, reviewing courts should accord great deference to the magistrate's determination of probable cause, and doubtful or marginal cases in this area should be resolved in favor of upholding the warrant. *Gates, supra*, at 237, fn. 10, 103 S.Ct. at 331, fn. 10. It is equally important to note that, in this context, "reviewing court" clearly includes a

trial court conducting a suppression hearing as well as the appellate courts, insofar as we are all conducting the same "after-the-fact scrutiny" of the sufficiency of the affidavit.

**{¶32}** 45 Ohio St.3d at 330, 544 N.E.2d at 645.

**{¶33}** Search warrants and their accompanying affidavits enjoy a presumption of validity. *State v. Hmedian*, 5th Dist. Stark No. 2014CA000117, 2014-Ohio-5728, ¶ 16, *citing State v. Wallace*, 7th Dist. Nos. 11 MA 137–11, MA 155, 2012–Ohio–6270. The duty of a reviewing court is to ensure probable cause existed at the time the search warrant was executed. *Gates, supra*, at 214.

**{¶34}** The affidavit in support of the search warrant for Appellant's blood stated as follows:

On or about June 20, 2018, Troopers with the Ohio State Highway Patrol responded to a two vehicle crash on State Route 37, north of Refugee Road in Union Township, Licking County, Ohio. Upon arrival, Troopers observed William Schubert's vehicle, a 2001 Silver Jeep Grand Cherokee, in the southbound lane with heavy damage to the left front side of the vehicle. Troopers also observed a black Chrysler 200 in the grass off to the east side of the roadway. The driver of the Chrysler 200 was pronounced deceased at the scene.

Based on the observations by the Troopers, it was determined that the Chrysler 200 was traveling northbound and Mr. Schubert was traveling

southbound. These observations included but are not limited to, fluid trails from the vehicles, scratches and marks on the roadway. Moreover, it was determined that Mr. Schubert had [g]one left of center, striking the Chrysler 200 head on. After impact, the Chrysler 200 went off the east side of the road into the grass. Mr. Schubert's vehicle proceeded back into the southbound lane, and came to a final stop facing southbound.

Paramedics on scene briefly interviewed Mr. Schubert. When asked if he had any drugs in his system, Mr. Schubert indicated that numerous substance[s] were in his system. Trooper's [sic] also observed Mr. Schubert touching his head. Mr. Schubert's eyes also were pinkish in color, consistent with drug use.

{¶35} Excising the reported statements Appellant made to the paramedics concerning substances in his system, as discussed in Appellant's second assignment of error, we find the trial court did not err in denying Appellant's motion to suppress on the basis the warrant was not supported by probable cause. The positioning of the vehicles and marks on the roadway led the Ohio State Highway Patrol to conclude Appellant caused a fatal head-on collision by traveling into the wrong lane of travel. The trooper noted Appellant's eyes were pinkish in color, consistent with drug use. Applying the highly deferential standard to the issuing magistrate's finding of probable cause, we find the affidavit supports the conclusion there was a fair probability evidence of the cause of the crash would be found in Appellant's blood sample.

**{¶36}** We next turn to the first warrant issued for the search of three cell phones found at the scene. The affidavit in support of this warrant indicates Appellant's blood test results were positive for both amphetamine and methamphetamine. The affiant further stated there were no witnesses to the crash, and three cell phones were found outside of the vehicles at the scene of the crash. The affidavit states:

Affiant avers, based on his knowledge, training and experience, the digital devices in question, **may** contain additional evidence into the criminal investigation. The digital device **may** contain personal identifiers for the owner, also date and time stamps for incoming and outgoing calls, text messages and/or Internet browsing information. The affiant submits the digital device in question **may** contain evidence to phone conversations, texting and/or video related to the crimes referenced. Also, the use of cloud storage has become so closely tied with many devices that the cloud storage functions as an extension of their digital devices; for this reason, a person **may** have data on the cloud storage that is not present on the digital device. For these reasons, the affiant requests authorization to seize, listen to, read, review and copy, operate and maintain the above described property and convert it to human readable form as necessary. (Emphasis added).

**{¶37}** At the point in time when police sought the warrant for the three cell phones found at the scene, they were aware Appellant had drugs in his system at the time of the

crash, and thus had information as to the probable cause of the crash. The repeated use of the word "may" in the affidavit, as highlighted above, demonstrates the officer did not have a fair probability to believe evidence of the cause of the crash was in the cell phone date, but rather was merely speculating. In virtually every crash a cell phone is likely to be found, whether in the grass at the scene, in the car, on the driver's person, in a purse, or in a briefcase. The paragraph of the affidavit, cited above to support a fair probability evidence of the crime in the instant case would be found in the cell phones, includes no details which suggest this particular crash was caused by cell phone use. The affidavit in the instant case could be used to seek a warrant in any case in which a cell phone was found anywhere in the car, on the driver's person, or near the scene of a collision. We decline to adopt a rule police may obtain a warrant to search every cell phone found in a car crash on the speculation evidence of texting or other improper cell phone use while driving "may" be found in the phone. We therefore conclude the trial court erred in finding the warrant for the search of the three cell phones was supported by probable cause.

{¶38} However, our inquiry into the initial search of the cell phones does not end with our conclusion the warrant was not supported by probable cause. Having determined the search warrant was not supported by probable cause, we next consider whether the "good faith exception" to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897 (1984), and adopted by the Ohio Supreme Court in *State v. Wilmoth*, 22 Ohio St.3d 251 (1986), applies in the instant case. Under the "good faith exception," the exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in objectively reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be

unsupported by probable cause. *State v. George*, 45 Ohio St.3d 325, 330 (1980), *citing Leon, supra* at 918-23, 926. However, even under the "good faith exception," suppression of evidence is appropriate where any of the following occurs:

> * * * the magistrate or judge * * * was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth * * *; (2) * * * the issuing magistrate wholly abandoned his judicial role * * *; (3) an officer purports to rely upon * * * a warrant based upon an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) * * * depending on the circumstances of the particular case, a warrant may be so facially deficient-i.e. in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid.

**{¶39}** *Leon, supra* at 923.

**{¶40}** Nothing in the record suggests the affiant knew information in the affidavit was false, or would have known it was false but for reckless disregard of the truth. The record does not demonstrate the magistrate wholly abandoned his judicial role. While we found the affidavit did not provide sufficient probable cause to support the warrant, we do not find it so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable. The affidavit notes there were no witnesses to the crash, and while the existence of drugs in Appellant's system provided an explanation for his driving,

it was possible the phones would reveal further evidence of distracted driving either on Appellant's part or on the part of the victim. Finally, the warrant was not so facially deficient no executing officer could reasonably presume it was valid. The warrant set forth the three phones to be searched and the places in such phones where data might be located. We therefore find the good faith exception applied to the first warrant for Appellant's cell phone, and the trial court did not err in denying his motion to suppress all evidence seized from the cell phone.

**{¶41}** The affidavit for the second warrant for Appellant's phone stated while executing the warrant on the three phones found at the scene, the forensic examiner observed photographs of nude young females, which from his training and experience he believed to be juvenile females. We find this affidavit provided probable cause for the further search of the phone for evidence of the crime of pandering obscenity involving a minor.

**{¶42}** Appellant's third and fourth assignments of error are overruled.

**{¶43}** The judgment of the Licking County Common Pleas Court is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Wise, Earle, J. concurs in part; dissents in part

*Wise, Earle, J., concurs in part and dissents in part.*

{¶ 44} I concur in part and respectfully dissent in part.

{¶ 45} I concur with the majority through paragraph 37.

{¶ 46} As to the application of the "good faith exception," I dissent.

{¶ 47} The warrant for the search of the three cell phones found at the accident scene plainly lacked probable cause. The affidavit, set out in paragraph 36 of the majority opinion, provided mere speculation that a possible list of data "may" be found upon a search of the phones. The types of data sought by the warrant, almost certain to be found in any cell phone, was not linked with any particularity as to how it would lead to evidence of a crime. There was simply no evidence of appellant's use of a cell phone or phones at the time of the accident. It is possible appellant could have been using a phone or phones. It is just as possible at any accident scene. Does this justify a warrant for the search of every cell phone found at every accident?

{¶ 48} In *Leon* and *Wilmoth, supra*, the United States and Ohio Supreme Courts have found the good faith exception applies where there was objective reasonable reliance by the officers on the warrant issued by a detached and neutral magistrate. However, the exception does not apply if the warrant is "so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *Leon,* 468 U.S. at 923. The *Leon* court applied the good faith exception where it found the warrant "was supported by much more than a 'bare bones' affidavit." *Id.* at 926.

{¶ 49} I would find the affidavit here to be based upon nothing more than speculation. This is just the type of "bare bones" affidavit which cannot be the basis of objective reasonable reliance on a warrant.

{¶ 50} I find the good faith exception does not apply in this case and would affirm appellant's fourth assignment of error.