[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Schubert*, Slip Opinion No. 2022-Ohio-4604.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2022-OHIO-4604

THE STATE OF OHIO, APPELLEE, *v.* SCHUBERT, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Schubert*, Slip Opinion No. 2022-Ohio-4604.]**

*Criminal law—Fourth Amendment to United States Constitution—Good-faith exception to exclusionary rule—Probable cause—For the good-faith exception to the exclusionary rule to allow the introduction of evidence obtained through a defective search warrant, the affidavit supporting the warrant must evince a minimum connection between the item or place searched and the alleged criminal activity—Good-faith exception to exclusionary rule did not apply to search of cell phones found at automobile-accident scene—Warrant to search cell phones lacked probable cause—Court of appeals' judgment reversed and cause remanded.*

(No. 2021-0761—Submitted April 27, 2022—Decided December 22, 2022.)

APPEAL from the Court of Appeals for Licking County, No. 2020 CA 00040, 2021-Ohio-1478.

_____

**STEWART, J.**

{¶ 1} In this appeal, we are asked to decide whether the good-faith exception to the exclusionary rule applies to the execution of a constitutionally deficient search warrant authorizing the search of cell phones found at the scene of a car crash, when nothing in the affidavit supporting the warrant connected the phones to the crash other than the police officer's averment that evidence of how the accident occurred "may" be found on the phones. We determine that the good faith-exception does not apply under the facts of this case. For the objective-good-faith exception to the exclusionary rule to allow the introduction of evidence obtained through a defective search warrant in violation of the Fourth Amendment to the United States Constitution, the affidavit supporting the warrant must evince a minimum connection between the item or place searched and the alleged criminal activity. This is not a difficult standard to meet; a minimum connection means only some modicum of evidence, however slight, that connects the criminal activity described in the affidavit to the item or place searched. *See United States v. White*, 874 F.3d 490, 497 (6th Cir.2017). The warrant affidavit at issue in this case, even when generously construed, does not meet this standard. Thus, the good-faith exception to the exclusionary rule does not apply to the search of the cell phones in this case.

## I. Facts and Procedural History

{¶ 2} Appellant, Alan Schubert, drove his car left of center and hit another car, causing the death of the driver of the other car. Police obtained a search warrant for Schubert's blood, and a blood draw was performed by staff of the local hospital where Schubert was taken. His blood tested positive for amphetamine, methamphetamine, and fentanyl. Thereafter, police obtained another search warrant for the search of three cell phones that were discovered at the scene of the crash. The probable-cause affidavit signed by the officer who applied for the second warrant stated that he was seeking the warrant to search the phones because

they "may" contain additional evidence regarding the active aggravated-vehicular-homicide investigation relating to the crash. Specifically, the affidavit stated:

> The digital device may contain personal identifiers for the owner, also date and time stamps for incoming and outgoing calls, text messages and/or Internet browsing information. The affiant submits the digital device in question may contain evidence to phone conversations, texting, and/or video related to the crimes referenced. Also, the use of cloud storage has become so closely tied with many devices that the cloud storage functions as an extension of their digital devices; for this reason, a person may have data on the cloud storage that is not present on the digital device. For these reasons, the affiant requests authorization to seize, listen to, read, review and copy, operate and maintain the above described property and convert it to human readable form as necessary.

**{¶ 3}** While searching Schubert's phone, police discovered what they believed to be pictures of nude juveniles. Schubert was subsequently charged in the Licking County Common Pleas Court with five second-degree-felony counts of pandering obscenity involving a minor, one fourth-degree-felony count of pandering obscenity involving a minor, and one count each of second-degree-felony and third-degree-felony aggravated vehicular homicide.

**{¶ 4}** Schubert filed a motion to suppress the evidence obtained from the search of the phones, arguing that the affidavit supporting the search warrant did not establish probable cause upon which the magistrate could issue the warrant. The trial court denied the motion to suppress, finding that the affidavit established probable cause for the search warrant to issue. Schubert then pleaded no contest to all the charges and was found guilty of them. The court merged the pandering-

obscenity-involving-a-minor counts and sentenced Schubert to four years in prison for that conviction. The court also merged the aggravated-vehicular-homicide counts and sentenced Schubert to eight years in prison for that conviction. The court ordered the four-year and eight-year prison terms to be served consecutively, for an aggregate prison term of 12 years.

{¶ 5} On appeal, the Fifth District Court of Appeals affirmed the trial court's judgment denying Schubert's motion to suppress. 2021-Ohio-1478, 170 N.E.3d 1296, ¶ 37-43. In doing so, however, the appellate court disagreed with the trial court's decision that the affidavit supporting the warrant to search the cell phones established probable cause for the search. *Id.* at ¶ 37. The appellate court noted that at the time police requested the warrant to search the cell phones, they already had information about the cause of the crash—the amphetamine and methamphetamine in Schubert's system. *Id.* The court further noted that if the affidavit's assertion that there "may" be evidence of the cause of the crash on the phones were enough to establish probable cause to search the phones, then there would be probable cause to search any phone discovered at the scene of a crash based on mere speculation that the crash was caused by distracted driving. *Id.*

{¶ 6} The appellate court refused to sanction such a blanket rule that probable cause always exists in such instances, instead determining that police in this case needed to establish a connection between the cell phones and the crash, which they had not done. *Id.* Nevertheless, the appellate court upheld the cell-phone search under the "good faith exception" to the exclusionary rule set forth in *United States v. Leon*, 468 U.S. 897, 919, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), and adopted by this court in *State v. Wilmoth*, 22 Ohio St.3d 251, 254, 490 N.E.2d 1236 (1986). 2021-Ohio-1478 at ¶ 38-41.

{¶ 7} Schubert filed a discretionary appeal to this court, and we accepted review of his third proposition of law, which states:

> An officer cannot reasonably presume a warrant to search a cell phone found at a crash scene is valid, when the affidavit supporting the warrant only states that the police "may" find evidence of how a crash occurred on the phone, without any actual evidence that the driver was using his phone when the crash occurred.

*See* 164 Ohio St.3d 1419, 2021-Ohio-2923, 172 N.E.3d 1041.

## II. Analysis

### A. *The Exclusionary Rule and* Leon*'s Good-Faith Exception*

{¶ 8} The exclusionary rule safeguards Fourth Amendment rights through its deterrent effect. *Herring v. United States*, 555 U.S. 135, 139-140, 129 S.Ct. 695, 172 L.Ed.2d 496 (2009), citing *United States v. Calandra*, 414 U.S. 338, 348, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). In *Leon*, the United States Supreme Court explained that given the heavy societal cost of excluding "inherently trustworthy tangible evidence" from a jury's consideration, *id.* at 907, the exclusionary rule should be applied only when its application will result in appreciable deterrence of Fourth Amendment violations, *id.* at 909. The *Leon* court recognized that when an officer's conduct was objectively reasonable, " 'excluding the evidence will not further the ends of the exclusionary rule in any appreciable way.' " *Id.* at 920, quoting *Stone v. Powell*, 428 U.S. 465, 539-540, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (White, J., dissenting). It thus adopted the objective-good-faith exception to the exclusionary rule for it to be applied to instances in which police acted in an objectively reasonable manner. *Id.* at 918-919.

{¶ 9} The court in *Leon* explained that a police officer's having relied on a warrant issued by a judicial officer—even when the warrant was later determined to be invalid for want of probable cause—generally suffices to show that the police officer " 'acted in good faith in conducting the search.' " 468 U.S. at 922, 104 S.Ct.

3405, 82 L.Ed.2d 677, quoting *United States v. Ross*, 456 U.S. 798, 823, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982), fn. 32.  Nevertheless, the court made clear that a police officer's reliance on a warrant, even in good faith, must still be "objectively reasonable," *id.*, and that "in some circumstances the [police] officer will have no reasonable grounds for believing that the warrant was properly issued," *id.* at 922-923.  The court then noted certain circumstances in which it would not be objectively reasonable for a police officer to rely on a warrant, one being when the affidavit supporting the warrant is " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' "  *Id.* at 923, quoting *Brown v. Illinois*, 422 U.S. 590, 610-611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part).  "An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit."  *White*, 874 F.3d at 496, citing *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir.1996).  An affidavit is "bare bones" when it fails to establish a minimally sufficient nexus between the item or place to be searched and the underlying illegal activity.  *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir.2006).

{¶ 10} To avoid being labeled as "bare bones," an affidavit must state more than " 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge,' " *United States v. Christian*, 925 F.3d 305, 312 (6th Cir.2019), quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir.2004), fn. 4, and make " 'some connection,' " *id.* at 313, quoting *White* at 497, " 'between the illegal activity and the place to be searched,' " *id.*, quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir.2016).

{¶ 11} The minimally-sufficient-nexus understanding of the "so lacking in indicia of probable cause" language employed in *Leon* developed out of the rule of law first announced in *Illinois v. Gates*, 462 U.S. 213, 236-239, 103 S.Ct. 2317, 76

L.Ed.2d 527 (1983), in which the United States Supreme Court held that some deference must be accorded to a judicial officer's probable-cause decision. Although the Fourth Amendment requires search warrants to issue only "upon probable cause," meaning only when the affidavit supporting the warrant establishes a "fair probability that contraband or evidence of a crime will be found in a particular place," *Gates* at 238, the court in *Gates* made clear that the "duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for * * * conclud[ing]' that probable cause existed," (ellipsis and brackets added in *Gates*) *id.* at 239, quoting *Jones v. United States*, 362 U.S. 257, 271, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Thus, even though the existence of probable cause is a legal question to be determined on the historical facts presented, *see Ornelas v. United States*, 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996), a warrant should be upheld when the issuing judicial officer had a substantial basis for believing that probable cause existed, regardless of what the reviewing court's independent determination regarding probable cause might be.

{¶ 12} With this understanding, the United States Court of Appeals for the Sixth Circuit adopted the Fourth Circuit's explanation for why a standard less strict than that of "substantial basis" applies to the good-faith exception:

> "If a lack of a substantial basis also prevented application of the *Leon* objective good faith exception, the exception would be devoid of substance. In fact, *Leon* states that * * * a finding of objective good faith [is inappropriate] when an officer's affidavit is 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' This is a less demanding

showing than the 'substantial basis' threshold required to prove the existence of probable cause in the first place."

(Ellipsis and brackets added in *Carpenter*.) *United States v. Carpenter*, 360 F.3d 591, 595 (6th Cir.2004), quoting *United States v. Bynum*, 293 F.3d 192, 195 (4th Cir.2002). Thus, the Sixth Circuit concluded that when an affidavit does not contain a substantial basis supporting the judicial officer's finding of probable cause but nevertheless contains a "minimally sufficient nexus between the illegal activity and the place to be searched," a police officer relying on the warrant acts in objective good faith. *Id.* at 596. Further defining the contours of what "minimally sufficient nexus" means, the Sixth Circuit has explained that "[i]f the reviewing court is 'able to identify in the averring officer's affidavit *some* connection, regardless of how remote it may have been'—'some modicum of evidence, however slight'—'between the criminal activity at issue and the place to be searched,' then the affidavit is not bare bones and official reliance on it is reasonable." (Emphasis added in *Laughton*.) *White*, 874 F.3d at 497, quoting *United States v. Laughton*, 409 F.3d 744, 749-750 (6th Cir.2005).

{¶ 13} The minimally-sufficient-nexus standard thus recognizes the Supreme Court's determination in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677, that a judicial officer is the foremost person responsible for determining probable cause and that law-enforcement officers are not expected to have the same nuanced understanding of probable cause that judicial officers are expected to have. Nevertheless, the minimally-sufficient-nexus standard recognizes the important contours of *Leon*'s holding: that law-enforcement officers also play a role in upholding the Fourth Amendment; that it is not always reasonable for law enforcement to rely on a judicial officer's finding of probable cause and that when it is unreasonable to do so, the exclusionary rule should apply to enforce the Fourth Amendment; and that when a warrant is based on an affidavit that is so lacking in

indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable, no well-trained law-enforcement officer should rely on it.

*B. The Good-Faith Exception to the Exclusionary Rule Does Not Apply*

{¶ 14} We conclude that under the facts of this case, the warrant affidavit at issue does not evince a minimal connection between the alleged criminal activity and the three cell phones discovered at the scene of the car crash. Thus, the appellate court erred in applying *Leon*'s good-faith exception to the exclusionary rule.

{¶ 15} The warrant affidavit at issue includes the following factual assertions:

> On June 20, 2018, at approximately 4:00 p.m. Trooper Vogelmeier was dispatched to a fatal crash on SR 37 near Milepost 23 in Licking County, Union Township, Ohio. According to Vogelmeier's report, evidence at the scene indicates the vehicle driven by Alan Schubert was traveling Southbound on SR 37 and crossed left of center striking Northbound vehicle driven by [the victim].
>
> * * *
>
> [The victim] died as a result of the injuries sustained in the crash. Mr. Schubert was transported to the hospital with serious injuries. An official statement was not taken from Mr. Schubert and he told a sergeant on scene he did not remember how the crash occurred. A blood sample from Mr. Schubert was obtained from Grant Hospital via a search warrant through Licking County. Those results were returned positive for amphetamine and methamphetamine.

There were no witnesses to the crash and the three phones were found outside of the vehicles at the scene.

The affiant, Sergeant John Chaney of the Ohio State Highway Patrol, then offered the following:

Affiant avers, based on his knowledge, training and experience, *the digital devices in question, may contain additional evidence* into the criminal investigation. The digital device may contain personal identifiers for the owner, also date and time stamps for incoming and outgoing calls, text messages and/or Internet browsing information. The affiant submits *the digital device in question may contain evidence* to phone conversations, texting and/or video related to the crimes referenced. Also, the use of cloud storage has become so closely tied with many devices that the cloud storage functions as an extension of their digital devices; for this reason, a person may have data on the cloud storage that is not present on the digital device. For these reasons, the affiant requests authorization to seize, listen to, read, review and copy, operate and maintain the above described property and convert it to human readable form as necessary.

(Emphasis added.)

{¶ 16} Of course, much of this statement is obviously true. Cell phones and other digital devices regularly contain personal identifiers and call, text, and internet-browsing information, and they have cloud storage that can function as an extension of the device. Critically missing from this affidavit, however, is information providing any reason to believe that the material listed in it would

10

contain evidence relevant to the crash in this case. Although the affiant bases his assertion that the cell phones "may" contain evidence of an aggravated vehicular homicide on his "knowledge, training and experience," he does not venture to explain what that knowledge, training, or experience amounts to, let alone how it relates to the facts of this case. Without that information, the affidavit's language is wholly conclusory as to the existence of probable cause to search the cell phones. Furthermore, the affiant's repeated use of the term "may" patently signals that whatever his beliefs might have been regarding potential evidence on the phones, they were based in complete speculation. A well-trained police officer offering or encountering this language should know that such conclusory and speculative statements, without more, do not support a finding of probable cause. *See Aguilar v. Texas*, 378 U.S. 108, 111-115, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) (an affidavit that states suspicions, beliefs, or conclusions, without providing some underlying factual circumstances pertaining to veracity, reliability, and basis of knowledge, is a bare-bones affidavit), *abrogated on other grounds by Gates*, 462 U.S. at 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527.

{¶ 17} Moving beyond the affiant's conclusory and speculative assertion that there "may" be evidence on the phones, there is not a single fact or statement in the remainder of the affidavit, nor are there any inferences that may be drawn therefrom, suggesting that the phones had anything to do with the crime of aggravated vehicular homicide. To begin, the averments concerning the circumstances of the crash simply explain where and when it occurred and that Schubert's car went left of center and hit the victim's car. None of these averments suggest that the cell phones might contain evidence of the crime of aggravated vehicular homicide.

{¶ 18} The affiant's additional averments that the victim died, that there were no witnesses to the crash, and that Schubert did not remember how the crash occurred fare no better in supplying the necessary, albeit minimal connection

between the cell phones and the alleged crime. On the contrary, these statements highlight the *utter lack* of any facts or evidence suggesting that the phones were involved in causing the crash. For example, had the victim survived or had there been witnesses to the crash, those individuals may have been able to say that they saw Schubert using his phone at the time of the crash. If this hypothetical information were available and included in the affidavit, it would create at least a minimally sufficient connection between the phones and the alleged crime. Similarly, if Schubert had had better recall of the incident, he might have been able to offer some insight as to what happened just before the collision. And if this insight were included in the affidavit, it may have suggested some connection between the phones and the alleged crime. But because none of this information or insight was available, there was no minimally sufficient nexus between any evidence that might have been found on the phones and the crime.

{¶ 19} It is axiomatic that a proper finding of probable cause requires the affidavit to show not only the affiant's knowledge but also that the affiant has sufficient basis for the knowledge. *See Gates*, 462 U.S. at 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (a judicial officer's job is to determine "whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place"). It is thus inconceivable that an affiant's *lack of knowledge* could somehow contribute to a finding of probable cause.

{¶ 20} The statement in the affidavit noting that Schubert's blood had tested positive for the presence of amphetamine and methamphetamine after the crash also supplies no connection whatsoever between the crime and the cell phones. Indeed, the rational inference that may be drawn from that fact is that impaired driving caused the crash. That this is the only evidence or information in the affidavit that suggests what may have caused Schubert's car to cross the center line, and that it

bears no connection to the cell phones, is significant and further informs our analysis. The ultimate question in this case is whether the affidavit supporting the warrant was so lacking in indicia of probable cause that no reasonable officer would have relied on the warrant. An affidavit that includes facts and statements that affirmatively cut against a finding of probable cause—as opposed to simply being neutral on the issue—not only fails to support a finding of probable cause but affirmatively reduces any indicia of it and thus informs whether an officer's reliance on the warrant was reasonable. *See People v. Smith*, 2022 CO 38, 511 P.3d 647, ¶ 25; *United States v. Valenzuela*, 365 F.3d 892, 897 (10th Cir.2004).

{¶ 21} On these facts, we hold that the information in the warrant affidavit did not establish a minimal connection between the alleged crime of aggravated vehicular homicide and the cell phones that were searched. We therefore reverse the Fifth District's judgment affirming the trial court's denial of Schubert's motion to suppress on the court of appeals' ground that the good-faith exception to the exclusionary rule applied. To hold otherwise would allow bare-bones affidavits like the one at issue here to be used time and time again in future investigations whenever one or more cell phones or similar electronic devices are discovered at a crime scene.

{¶ 22} We recognize that it may seem to some that this decision indicates that we expect a police officer to know more than a judicial officer about what constitutes probable cause and that some may find it unfair to hold police accountable for a judicial officer's mistake. However, in any case in which a warrant is deemed facially invalid, the fact that the judicial officer issued the warrant in the first place means that the judicial officer believed that probable cause existed. The United States Supreme Court recognized this fact in *Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677. But the court nevertheless made clear that law enforcement still has a duty to act reasonably in executing a warrant and that

there is no irrebuttable presumption of good-faith reliance regarding all warrants that excuses all facial deficiencies. *See id.* at 923-924.

{¶ 23} The Supreme Court's decision in *Leon* tacitly recognizes that all parties involved with securing and executing a warrant are required to uphold individuals' Fourth Amendment rights. And each government official involved with obtaining and executing a search warrant plays a role in protecting those rights. While the judicial officer is the official initially tasked with determining whether probable cause exists to issue a search warrant, the government's duty to adhere to the Fourth Amendment does not stop there.

{¶ 24} *Leon* makes clear that police officers also play a role in protecting Fourth Amendment rights. They are required to (1) be truthful in search-warrant affidavits, (2) not rely on warrants that they know were rubber-stamped by a judicial officer who did not make an independent determination of probable cause, (3) know that a warrant is facially deficient when it fails to state with particularity the item or place to be searched and the things to be seized, and (4) *not execute a warrant that is so lacking in indicia probable cause that no well-trained officer would reasonably rely on it. See Leon* at 923. Courts reviewing a challenged search warrant also play a role in upholding the Fourth Amendment; they are required to suppress evidence when the good-faith exception to the exclusionary rule does not apply because one or more of these four requirements has not been met and it was unreasonable for the police officer to rely on the warrant. *See Leon* at 923. While it might seem unfair that the law requires a police officer to question a judicial officer's probable-cause determination before the officer may properly execute the warrant, that is in fact what the law requires. Thus, when the issue before this court is viewed in its proper context, it is clear that finding the good-faith exception inapplicable in this case and excluding the evidence obtained in the illegal search does not punish law enforcement for the judicial officer's failure but simply ensures that the Fourth Amendment is not eroded.

### C. Probable Cause to Issue the Warrant Was Lacking

{¶ 25} Our holding today is that the appellate court erred in applying the good-faith exception to the exclusionary rule in this case, and we reverse the appellate court's judgment on that basis. However, we affirm the appellate court's determination that the warrant affidavit did not establish probable cause and that the warrant should not have been issued.[1] *See* 2019-Ohio-1478, 170 N.E.3d 1296, at ¶ 37.

{¶ 26} The warrant at issue in this case granted broad access to search all data on three cell phones for evidence of "intent to commit a violation of" R.C 2903.06, aggravated vehicular homicide. The judicial officer issued the warrant, thus granting the state's request for unfettered access to search the phones. However, the warrant was not supported by probable cause, but rather mere

---

1. Although the state did not ask this court to accept a discretionary appeal of the appellate court's judgment that the warrant affidavit did not establish probable cause to search the cell phones, we nevertheless feel it necessary to address that question to discourage future Fourth Amendment violations of this sort. The state's decision not to appeal the appellate court's probable-cause determination in no way limits our ability to determine whether the warrant affidavit supported a finding of probable cause to search. Indeed, in response to arguments raised in *Leon* that the Supreme Court's adoption of a good-faith exception to the exclusionary rule would cause Fourth Amendment jurisprudence to suffer, the court stated:

> If the resolution of a particular Fourth Amendment question is necessary to guide future action by law enforcement officers and magistrates, nothing will prevent reviewing courts from deciding that question before turning to the good-faith issue. Indeed, it frequently will be difficult to determine whether the officers acted reasonably without resolving the Fourth Amendment issue. Even if the Fourth Amendment question is not one of broad import, reviewing courts could decide in particular cases that magistrates under their supervision need to be informed of their errors and so evaluate the officers' good faith only after finding a violation. In other circumstances, those courts could reject suppression motions posing no important Fourth Amendment questions by turning immediately to a consideration of the officers' good faith. We have no reason to believe that our Fourth Amendment jurisprudence would suffer by allowing reviewing courts to exercise an informed discretion in making this choice.

468 U.S. at 925, 104 S.Ct. 3405, 82 L.Ed.2d 677. The significant privacy interests at stake here, as well as law-enforcement and judicial officers' apparent need for guidance in this area, compel our consideration of the probable-cause question.

conjecture. Not only does the supporting affidavit reflect this truth—as we have explained in detail above—but so does the trial court's decision denying Schubert's motion to suppress. Specifically, the judgment entry denying the motion to suppress states:

> The affidavit for Exhibit 3 specifies it is to search cellular telephones, including SIM cards and/or SD cards for each phone, related documentation, passwords, encryption keys, access codes, voicemail, email, and geographical information. It alleges these devices may contain personal identities for the owner, date and time stamps for incoming and outgoing calls, text messages and/or internet browsing information, evidence pursuant to phone conversations, texting or video relating to these crimes. It also explains how Cloud storage could indicate use and time even with a lack of anything on the digital device.
>
>       \* \* \*
>
> *In the present case, it is unknown what may be on the phone to indicate distracted driving, only that three phones were found at the scene, which may have belonged to the defendant or the decedent or anyone else, and may have been evidence of distracted driving to explain the left-of-center fatal crash.*
>
> *The court finds the affidavit is sufficient to set forth reasonable grounds to search the cell phones found at the scene of the crash.*

(Emphasis added.)

{¶ 27} It is clear from this entry that the trial court was operating under the mistaken belief that as a matter of policy, any time there is a car crash, police may

search any cell phones discovered at the scene to discern whether there is evidence of distracted driving. This shows that the court was not evaluating the particular facts presented in the warrant affidavit to determine whether there was a fair probability that the phones would contain evidence of the crime—i.e., the probable-cause analysis—but rather was ruling in accordance with its mistaken belief about the law concerning probable-cause determinations as to cell phones recovered at the scene of a crash.

{¶ 28} On appeal, the Fifth District took note of this error. It explained the simple truth that cell phones are likely to be found at the scene of any car crash and that without an affidavit's presenting specific, case-related facts showing a fair probability that evidence of the crime will be found on the phones, it can only be speculated that the phones played any role in the crash. 2021-Ohio-1478, 170 N.E.3d 1296, at ¶ 37. The court of appeals explicitly "declin[ed] to adopt a rule [that] police may obtain a warrant to search every cell phone found in a car crash on the speculation evidence of texting or other improper cell phone use while driving 'may' be found in the phone," and it reversed the trial court's determination that probable cause existed to search the cell phones. *Id.* We agree with the appellate court's analysis on that issue and affirm its determination that there was not probable cause to issue the warrant to search the cell phones.

### III. Conclusion

{¶ 29} For the foregoing reasons, we conclude that the warrant at issue in this case is defective under the Fourth Amendment for want of probable cause in the warrant's supporting affidavit. We further conclude that because the warrant affidavit failed to establish any connection between the cell phones recovered at the scene of the crash and the crime of aggravated vehicular homicide, the affidavit is "bare bones" and the good-faith exception to the exclusionary rule does not apply. We therefore reverse the Fifth District's judgment affirming the trial court's denial of Schubert's motion to suppress the evidence recovered as a result of the

constitutionally defective search warrant, and we remand the cause to the trial court for further proceedings consistent with this decision.

Judgment reversed

and cause remanded.

O'CONNOR, C.J., and DONNELLY and BRUNNER, JJ., concur.

KENNEDY, J., dissents, with an opinion joined by FISCHER and DeWINE, JJ.

—————————

**KENNEDY, J., dissenting.**

{¶ 30} I dissent from the majority's decision that the good-faith exception to the exclusionary rule does not apply to the initial cell-phone searches in this case because the affidavit supporting the warrant is bare-bones. An affidavit is not "bare bones" merely because it "lacks the requisite facts and inferences to sustain the magistrate's probable-cause finding; rather, it must be *so* lacking in indicia of probable cause that, despite a judicial officer having issued a warrant, no reasonable officer would rely on it." (Emphasis sic.) *United States v. White*, 874 F.3d 490, 497 (6th Cir.2017). The affidavit at issue here does not state suspicions or conclusions but makes a connection between the fatal automobile accident and the cell phones found at the accident scene—it is not bare bones. Therefore, I would affirm the judgment of the Fifth District Court of Appeals.

## I. FACTS

{¶ 31} I agree with the facts and procedural history set forth in the majority opinion and rely on those here. However, it is necessary to clarify which officers were involved in obtaining and executing the search warrants.

{¶ 32} After receiving the results of appellant Alan Schubert's blood test, Ohio State Highway Patrol Sergeant John Chaney applied for the search warrant to search the three cell phones found at the accident scene. It was his affidavit in support of the warrant that the Franklin County municipal-court judge considered in finding probable cause to issue the warrant to search the three cell phones.

**{¶ 33}** The search of the cell phones, however, was executed by Ohio State Highway Patrol Forensic Computer Specialist Keith Ferguson. It was Ferguson who found nude pictures of juvenile females on Schubert's phone. Based on this information, Ohio State Highway Patrol Trooper Evan Cox applied for and was granted an additional search warrant to search Schubert's phone for child pornography.

## II. LAW AND ANALYSIS

### A. Standard of review

**{¶ 34}** "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. An appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *See State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). But the appellate court must decide the legal questions de novo. *Burnside* at ¶ 8.

### B. An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on it precludes application of the good-faith exception

**{¶ 35}** The crux of the dispute is whether the affidavit in support of the search warrant regarding the cell phones was so lacking in indicia of probable cause as to preclude application of the good-faith exception to the exclusionary rule. An affidavit that is " 'so lacking in indicia of probable cause * * * render[s] official belief in its existence entirely unreasonable.' " (Ellipsis and brackets added.) *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), quoting *Brown v. Illinois*, 422 U.S. 590, 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) (Powell, J., concurring in part). This inquiry requires a court to determine whether the officer who executed the warrant " 'reasonably believed that the warrant was properly issued, *not* whether probable cause existed in fact.' " (Emphasis added in *Carpenter*.) *United States v. Laughton*, 409 F.3d 744, 752 (6th Cir.2005), quoting

*United States v. Carpenter*, 360 F.3d 591, 598 (6th Cir.2004) (Gilman, J., concurring).

**{¶ 36}** As stated above, an affidavit "so lacking in indicia of probable cause that no reasonable officer would rely on the warrant" is known as a "bare bones" affidavit. *White*, 874 F.3d at 496. However, an affidavit is not bare bones merely because it lacks the requisite facts and inferences to sustain the probable-cause finding. *Id.* at 496-497.

**{¶ 37}** To avoid being labeled as "bare bones," an affidavit must state more than " 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge,' " *United States v. Christian*, 925 F.3d 305, 312 (6th Cir.2019), quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir.2004), fn. 4, and make " 'some connection,' " *id.* at 313, quoting *White* at 497, " 'between the illegal activity and the place to be searched,' " *id.*, quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir.2016).

**{¶ 38}** In *Leon*, 468 U.S. at 915, 104 S.Ct. 3405, 82 L.Ed.2d 677, the United States Supreme Court cited two classic examples of bare-bones affidavits, which were respectively considered in *Nathanson v. United States*, 290 U.S. 41, 46-47, 54 S.Ct. 11, 78 L.Ed. 159 (1933), and *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), *abrogated on other grounds by Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527. In *Nathanson*, the affiant had said nothing more than that " 'he has cause to suspect and does believe that' " liquor illegally brought into the United States " 'is now deposited and contained within the premises' " belonging to the defendant in that case. *Id.* at 44. In *Aguilar*, a warrant was obtained based only on officers' statements that they had " 'received reliable information from a credible person and do believe that heroin, marijuana, barbiturates and other narcotics and narcotic paraphernalia are being kept at the

above described premises for the purpose of sale and use contrary to the provisions of the law.' " *Id.* at 109.

{¶ 39} And in a recent case, *Spencer v. Staton*, 489 F.3d 658, 661-662 (5th Cir.2007), *opinion withdrawn in part on rehearing*, the United States Court of Appeals for the Fifth Circuit held that an affidavit that set forth the suspect's biographical and contact information, the charged offense, and a conclusory statement that the suspect had assisted her husband and her brother-in-law in evading authorities was "a textbook example of a facially invalid, 'barebones' affidavit." The Sixth Circuit Court of Appeals has similarly held that an affidavit stating that the defendant had been the last person to have contact with the victim, that the defendant had been convicted of and had served time in prison for murder and attempted murder, and that an unknown source had indicated that the defendant dealt marijuana was bare bones. *United States v. West*, 520 F.3d 604, 607, 610 (6th Cir.2008). The court in *West* concluded, "Taken on its face, the affidavit is bereft of any facts that suggest any connection between [the victim's] disappearance and any evidence likely to be found at the residence or in the van. Instead, the affidavit is based on unsubstantiated conclusions and unreliable hearsay, and accordingly, is constitutionally deficient." *Id.* at 610.

{¶ 40} Guided by these examples, this court should hold that Sergeant Chaney's affidavit is not so lacking in indicia of probable cause as to render Ferguson's official belief in the existence of probable cause when executing the search entirely unreasonable.

C. *The affidavit at issue is not so lacking in indicia of probable cause as to preclude application of the good-faith exception*

{¶ 41} In this case, the municipal-court judge found probable cause to search the cell phones based on Sergeant Chaney's affidavit. The affidavit stated that Schubert had been driving a vehicle that went left of center and struck an oncoming vehicle. There were no witnesses to the crash, Schubert had no memory

of how the crash had occurred, and the driver of the other vehicle involved in the crash died in the crash. The affidavit reported that Schubert's blood had tested positive for amphetamine and methamphetamine. And it explained that three cell phones whose owners had not been identified were found at the scene of the crash. Sergeant Chaney averred that "based on his knowledge, training and experience," the phones might contain "personal identifiers for the owner, also date and time stamps for incoming and outgoing calls, text messages and/or Internet browsing information" and evidence of "phone conversations, texting and/or video related to the crimes referenced."

**{¶ 42}** The affidavit looks nothing like the prototypical bare-bones affidavits first identified by the *Leon* court and later by the federal courts of appeals. The statements in the affidavit are not so vague as to be wholly conclusory or merely conjecture. Instead, they suggest *some* connection between the fatal automobile accident and the cell phones found at the accident scene; they suggest that information about how the crash occurred, such as whether distracted driving by one of the drivers was a factor in the fatal crash, may be found on the cell phones. That is all that is needed. As such, the affidavit is not "bare bones." To find otherwise fails to put daylight between a bare-bones affidavit and one that merely lacks probable cause. *See United States v. Gilbert*, 952 F.3d 759, 763 (6th Cir.2020).

**{¶ 43}** The Sixth Circuit's decision in *Carpenter*, 360 F.3d 591, provides support for this conclusion. In *Carpenter*, the Sixth Circuit considered the following affidavit language setting forth the reasons why the law-enforcement officer in that case believed that evidence of criminal conduct would be found in the residence to be searched:

> On June 23, 1999 at approx[imately] 12:30 pm, Helicopter
> Pilot Lt. Bob Crumley was conducting an aerial search of Hawkins

Co when he was flying over the above described property he saw numerous Marijuana Plants growing. Near the residence.

Upon information I received from Lt. Crumley, there is a road connecting the above described residence to the Marijuana Plants. Having personal knowledge that Lt. Crumley is certified in the identification of Marijuana I feel there is probable cause to search the said residence and property and seize any illegal contraband found.

(Brackets added.) *Id.* at 593.

{¶ 44} The court concluded that there was no probable cause to search the residence, because the affidavit failed to provide the required nexus between the residence and the illegal activity. *Id.* at 595. However, it could not say that the affidavit was "completely devoid of any nexus between the residence and the marijuana that the police observed." *Id.* at 595-596. Specifically, the court noted the affidavit's inclusion of the facts that "marijuana was growing 'near' the residence and that 'there is a road connecting' the residence and the marijuana plants." *Id.* at 596.

{¶ 45} Similarly, there is some nexus in this case between the fatal automobile accident and the cell phones found at the accident scene. The affidavit states that Schubert was driving the vehicle that went left of center and struck an oncoming vehicle, that three cell phones were found at the scene of the crash, and that based on Sergeant Chaney's knowledge, training, and experience, the phones might contain "date and time stamps for incoming and outgoing calls, text messages and/or Internet browsing information" and evidence of "phone conversations, texting and/or video related to the crimes referenced." Therefore, the affidavit was not " 'so lacking in indicia of probable cause as to render belief in its existence entirely unreasonable,' " *Leon*, 468 U.S. at 923, 104 S.Ct. 3405, 82 L.Ed.2d 677,

quoting *Brown*, 422 U.S. at 611, 95 S.Ct. 2254, 45 L.Ed.2d 416 (Powell, J., concurring in part).

{¶ 46} This conclusion is not altered by the fact that drugs were found in Schubert's system. While the presence of drugs in Schubert's system may provide an explanation for his driving left of center, it does not eliminate all other possible causes of the fatal crash, such as distracted driving by either Schubert or the driver of the other vehicle. Just because there was one factor known to be a possible cause of the accident does not mean there were no other factors that could have caused the accident.

{¶ 47} Here, Ferguson acted with an objectively reasonable, good-faith belief in the validity of the warrant when executing the search of the cell phones. The search warrant regarding the cell phones had been issued by a judicial officer and was not so lacking in indicia of probable cause that no reasonable officer would rely on it. Ferguson acted within the scope of the warrant. And when the search revealed nude pictures of juvenile females, Ferguson stopped the search and police applied for another warrant. The good-faith exception applies here.

{¶ 48} To echo the *Leon* court, it was the issuing judge's "responsibility to determine whether the officer's allegations establish[ed] probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment," 468 U.S. at 921, 104 S.Ct. 3405, 82 L.Ed.2d 677. Here, the judge found probable cause and issued the warrant. There are no facts in the record that should cause us to expect a reasonable officer executing the warrant to question the judge's probable-cause determination.

*D. The majority conflates an affidavit that is bare bones with an affidavit that lacks probable cause*

{¶ 49} "Too often courts raise the *Leon* bar, making it practically indistinguishable from the probable cause standard itself." *Christian*, 925 F.3d at 318 (Thapar, J., concurring). This is what the majority has done in concluding that

the affidavit at issue is bare bones; it has "confuse[d] a bare bones affidavit with one that merely lacks probable cause," *Gilbert*, 952 F.3d at 763.

{¶ 50} The majority ignores the verifiable facts in the affidavit, which establish "some connection" between the fatal automobile accident and the cell phones found at the accident scene. Instead, the majority requires the establishment of probable cause for the affidavit to avoid being labeled as "bare bones." In doing so, the majority fails to heed the fact that "[t]here must be daylight between the 'bare bones' and 'substantial basis' standards if *Leon*'s good-faith exception is to strike the desired balance between safeguarding Fourth Amendment rights and facilitating the criminal justice system's truth-seeking function." *Id.*

*E. The majority's consideration of probable cause is inappropriate*

{¶ 51} As the majority recognizes, the state did not appeal the appellate court's determination that the affidavit in support of the initial search warrant regarding the three cell phones lacked probable cause. Nevertheless, it proceeds to consider that probable-cause issue and affirms the appellate court's holding that the affidavit lacked probable cause and therefore the warrant should not have been issued. It does so on the belief that such review is necessary to discourage future, similar Fourth Amendment violations.

{¶ 52} "It has long been the policy of this court not to address issues not raised by the parties. * * * This court should be hesitant to decide such matters for the reason that justice is far better served when it has the benefit of briefing, arguing, and lower court consideration before making a final determination." *Sizemore v. Smith*, 6 Ohio St.3d 330, 333, 453 N.E.2d 632 (1983), fn. 2. An appellate court relies on the parties in a case to determine the issues before the court and to argue the applicable law:

> "The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research,

but [preside] essentially as arbiters of legal questions presented and argued by the parties before them." *Carducci v. Regan*, 714 F.2d 171, 177 (D.C.Cir.1983). Proceeding to decide an issue not briefed by the parties creates " 'the risk "of an improvident or ill-advised opinion, given [the court's] dependence * * * on the adversarial process for sharpening the issues for decision." ' " *Carbino v. West*, 168 F.3d 32, 35 (D.C.Cir.1999), quoting *Headrick v. Rockwell Internatl. Corp.*, 24 F.3d 1272, 1278 (10th Cir.1994), quoting *Herbert v. Natl. Academy of Sciences*, 974 F.2d 192, 196 (D.C.Cir.1992).

(Brackets and ellipsis sic.) *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 78 (O'Donnell, J., concurring in part and dissenting in part).

{¶ 53} This court should follow these principles, exercise a modicum of judicial restraint, and refrain from deciding issues that no party has asked this court to review and that the parties have had no opportunity to weigh in on.

## III. CONCLUSION

{¶ 54} The affidavit supporting the warrant set forth facts and circumstances that provided some connection between the fatal automobile accident and the cell phones found at the accident scene and was not bare bones. It was not so utterly lacking in indicia of probable cause as to render official belief in the existence of probable cause entirely unreasonable, thereby preventing application of the good-faith exception to the exclusionary rule. Therefore, the specialist who executed the warrant to search the cell phones acted in good-faith reliance on the warrant. Any error under the Fourth Amendment in this case rests with the judge who issued the challenged warrant, not with the law-enforcement employee who executed the warrant. Therefore, I would affirm the judgment of the Fifth District Court of Appeals. Because the majority does otherwise, I dissent.

FISCHER and DEWINE, JJ., concur in the foregoing opinion.

————————————

Jenny Wells, Licking County Prosecuting Attorney, and Clay Mischka, Assistant Prosecuting Attorney, for appellee.

Campbell Law, L.L.C., and April F. Campbell, for appellant.

————————————