[Cite as *State v. Shields*, 2024-Ohio-2317.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| DERRELL SHIELDS | : | Case No. 23 CAA 08 0048 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
                             Pleas, Case No. 21CR I 11 0639


JUDGMENT:                    Affirmed


DATE OF JUDGMENT:            June 17, 2024


APPEARANCES:

For Plaintiff-Appellee                    For Defendant-Appellant

MELISSA A. SCHIFFEL                       APRIL F. CAMPBELL
KATHERYN L. MUNGER                        545 Metro Place South, Suite 100
145 North Union Street, 3rd Floor         Dublin, OH  43017
Delaware, OH  43015

*King, J.*

{¶ 1}   Defendant-Appellant Derrell Shields appeals the decision of the Delaware County Court of Common Pleas denying his motion to suppress. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   On New Year's Eve 2013, Delaware City Police Detective Sean Franks, then a patrolman, responded to a robbery in progress at the Certified gas station on East William's Street in Delaware. Upon his arrival, the suspect had already fled. Statements from witnesses and surveillance video, however, established the suspect had entered the business with a cell phone held to his ear either talking or pretending to talk to someone. He then approached the counter and asked the clerk for tobacco products from behind the counter. As the clerk turned back around, Shields pointed a gun at the clerk and demanded the cash from the drawer.

{¶ 3}   Over the following year, the same suspect captured on the Certified gas station surveillance camera committed a string of like armed robberies using the same modus operandi on each occasion and while wearing the same navy blue hooded sweatshirt with white hoodie strings. When the suspect captured in these videos could not be named, the cases went cold.

{¶ 4}   In 2018, Franks became a detective. In 2020, he reopened the investigation into the gas station robberies. Because the individual shown in the surveillance videos carried a cell phone, Franks chose to utilize a "geofence warrant" to determine the offender's identity. The geofence warrant asked Google to first provide anonymous device tags for any cell phone in the vicinity of the robberies at the time of the robberies. Franks

asked that the area cover several blocks around the gas station. From that information, Franks was able to pinpoint one device that was in the vicinity of multiple robberies in different cities at the time of the robberies. Through a series of additional steps involving two additional warrants, Franks was able to identify Shields as the perpetrator in several gas station robberies.

{¶ 5} On November 4, 2021, the Delaware County Grand Jury returned an indictment charging Shields with five counts of aggravated robbery, felonies of the first degree.

{¶ 6} Shields entered not guilty pleas and filed a motion to suppress arguing the geofence warrant lacked probable cause and that the good faith exception should not apply. He further argued that the evidence obtained through the two warrants that followed should be suppressed as fruit of the poisonous tree. While the trial court agreed the geofence warrant lacked probable cause, it found the good faith exception applicable. It then found the two warrants that followed were supported by probable cause and did not address Shields' fruit of the poisonous tree argument.

{¶ 7} Following plea negotiations with the state, Shields entered pleas of guilty to three counts of aggravated robbery as contained in counts 1, 4, and 5 of the indictment and the attendant firearm specifications. In exchange for Shields' pleas, the state dismissed counts 2 and 3. The parties jointly recommended a 12-year prison term.

{¶ 8} After realizing he could not appeal the trial court's ruling on his motion to suppress given his guilty pleas, Shields filed a motion to withdraw his guilty pleas before sentencing took place. On October 19, 2022, a hearing was held on the motion. At the conclusion of the hearing the trial court granted Shields' motion to withdraw his guilty

pleas. The trial court additionally vacated its order dismissing counts two and three of the indictment and the attendant firearm specifications.

{¶ 9}   The state appealed the trial court's decision permitting Shields to withdraw his pleas. We affirmed the trial court's decision. *State v. Shields*, 5th Dist. No. 22 CAA 110079, 2023-Ohio-1561, 213 N.E.3d 1285.

{¶ 10} Shields subsequently entered pleas of no contest to the same three counts and one gun specification. He was again sentenced to an aggregate total of 12 years incarceration.

{¶ 11} Shields now brings this appeal challenging the trial courts denial of his motion to suppress. He raises two assignments of error as follow:

I

{¶ 12} "THE GOOD FAITH EXCEPTION DOES NOT APPLY TO THE FIRST WARRANT: DETECTIVE FRANKS AFFIDAVIT WAS "BARE BONES," THERE WAS NO NEXUS BETWEEN THE CRIME AND THE PLACE TO BE SEARCHED, AND IT WAS PLAINLY A FISHING EXPEDITION."

II

{¶ 13} "THE FRUIT OF THE POISONOUS TREE DOCTRINE APPLIES TO ALL EVIDENCE DETECTIVE FRANKS OBTAINED BECAUSE OF THE INFORMATION HE GOT FROM GOOGLE BASED ON THE FIRST WARRANT, UNDER THE OHIO AND FEDERAL CONSTITUTIONS."

I

{¶ 14} In his first assignment of error, Shields argues the good faith exception is inapplicable to the first warrant (the "geofence warrant") because the affidavit was a "bare bones" affidavit. We disagree.

Standard of Review

{¶ 15} There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. *State v. Fanning*, 1 Ohio St.3d 19, 437 N.E.2d 583 (1982); *State v. Klein*, 73 Ohio App.3d 486, 597 N.E.2d 1141(1991); *State v. Guysinger*, 86 Ohio App.3d 592, 621 N.E.2d 726(1993). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *State v. Williams*, 86 Ohio App.3d 37, 619 N.E.2d 1141 (1993). Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 641 N.E.2d 1172 (1994); *State v. Claytor*, 85 Ohio App.3d 623, 620 N.E.2d 906 (1993); *Guysinger*, supra. As the United States Supreme Court held in *Ornelas v. U.S.*, 517 U.S.

690, 116 S.Ct. 1657, 1663, 134 L.Ed.2d 911 (1996), "... as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal."

{¶ 16} When ruling on a motion to suppress, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See *State v. Dunlap*, 73 Ohio St.3d 308, 314, 1995-Ohio-243, 652 N.E.2d 988; *State v. Fanning*, 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982).

Shields' Arguments

{¶ 17} Shields appears to raise the third type of challenge. He takes issue with the trial court's determination that the good faith exception applied to the geofence warrant and that therefore the two subsequent warrants were supported by probable cause. Shields argues the good faith exception is inapplicable because Franks' warrant affidavit was a "bare bones" affidavit based on speculation, lacking a nexus between the criminal activity and the place to be searched, and is therefore unsupported by probable cause.

{¶ 18} "[T]he exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid." *State v. Wilmoth*, 22 Ohio St.3d 251, 254, 490 N.E.2d 1236 (1986) [analyzing and adopting the "good faith exception" advanced in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)]. Accord *State v. Schubert*, 171 Ohio St.3d 617, 2022-Ohio-4604, 219 N.E.3d 916, reconsideration denied, 168 Ohio St.3d 1515, 2022-Ohio-4809, 200 N.E.3d 296. The question presented is "whether a reasonably well trained

officer would have known that the search was illegal despite the magistrate's authorization." *Leon* at fn. 23.

{¶ 19} "An affidavit that is so lacking in indicia of probable cause that no reasonable officer would rely on the warrant has come to be known as a 'bare bones' affidavit." *United States v. White*, 874 F.3d 490, 496 (6th Cir. 2016), citing *United States v. Weaver*, 99 F.3d 1372, 1380 (6th Cir.1996). An affidavit is considered "bare bones" when it fails to establish a minimally sufficient nexus between the item or place to be searched and the underlying illegal activity. *United States v. McPhearson*, 469 F.3d 518, 526 (6th Cir.2006).

{¶ 20} In *State v. Schubert*, 171 Ohio St.3d 617, 2022-Ohio-4604, 219 N.E.3d 916 at ¶ 10, the Supreme Court of Ohio explained:

> To avoid being labeled as "bare bones," an affidavit must state more than " 'suspicions, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge,' " *United States v. Christian*, 925 F.3d 305, 312 (6th Cir.2019), quoting *United States v. Washington*, 380 F.3d 236, 241 (6th Cir.2004), fn. 4, and make " 'some connection,' " *id*. at 313, quoting *White* at 497, " 'between the illegal activity and the place to be searched,' " *id*., quoting *United States v. Brown*, 828 F.3d 375, 385 (6th Cir.2016).

{¶ 21} First, we find Shields' insistence that there "was no known suspect" disingenuous. State's exhibit 1 contains the geofence warrant affidavit. In it, Franks outlines he had indeed isolated a suspect who appeared on multiple surveillance videos and had "committed at least 14 aggravated robberies of gas stations throughout Central Ohio, Cincinnati, and Northern Kentucky between October 2013 and June 2014." This person was shown on the videos committing armed robbery in the same manner on each occasion, specifically, with a cell phone held to his ear as he walked to the counter and requested tobacco products. State's exhibit 1 paragraphs 1-5. All Franks was missing was the suspect's name.

{¶ 22} So too, there was a nexus between the robberies and the subject of the search; the anonymized device tags from three locations. In paragraphs 6-13 of the affidavit, Franks explained how location data for cell phones works, and that if Shields was using an Android phone or an iPhone using Google applications, Google will have gathered and retained location data for Shields' phone. Paragraph 17 explains the location and timeframes listed in the warrant would allow investigators to see which Google device tags were present in all three geographic areas before, during and after the robberies. In paragraph 18 of the affidavit Franks states "[s]ince it is unlikely that anyone other than the suspect would be present in all three distinct locations at the exact times of these robberies, I believe I will be able to identify the device tag that is present in all three locations at the appropriate times and then eventually identify the suspect of these aggravated robberies." State's exhibit 1.

{¶ 23} The only possible speculation we find contained in the affidavit was that Shields was using an Android device or an iPhone utilizing Google applications. But

Franks also stated in the affidavit that based on his training and experience, nearly every Android-powered device has a related Google account, and that iPhones support commonly used Google applications such as Google Search, Gmail, Google Maps, YouTube and Google Drive. Franks stated that in either event, Google would collect location data. State's exhibit 1, paragraphs 6-12.

{¶ 24} This was not a fishing expedition. Franks had a specific suspect, present at specific places at specific times. Shields faults the trial court for relying on Franks' testimony at the suppression hearing, arguing the trial court should have conducted a four-corners review. However, without considering Franks' testimony at the hearing, the affidavit alone provided more than suspicions or conclusions. It provided underlying factual circumstances regarding veracity, reliability, and basis of knowledge, and provided a nexus between the crimes and the subject of the search. We therefore reject Shields' argument that the affidavit was a "bare bones" affidavit.

{¶ 25} Shield likens this warrant to the warrant at issue in *State v. Schubert*, 2022-Ohio-4608. We find *Shubert* distinguishable on its facts. That matter involved a fatal car crash caused by Schubert who was driving under the influence of drugs, drove left-of-center and collided head on with another vehicle. At the hospital, Schubert's blood tested positive for amphetamines, methamphetamine, and fentanyl. At the scene of the crash, three cell phones were found outside of the vehicles involved. There was no allegation that the phones were in anyway related to the crash or in use during the crash, nor any indication as to who the phones belonged to. Officers requested a warrant "to search the phones because they 'may' contain additional evidence regarding the active aggravated-vehicular-homicide investigation relating to the crash." *Id.* ¶ 2. When the content of the

phones was searched, officers discovered what appeared to be nude juveniles which resulted in additional charges against Schubert. *Id.* ¶ 3.

{¶ 26} On appeal, this court found the good-faith exception applicable. On appeal to the Supreme Court of Ohio, however, the Court reversed our conclusion finding "the warrant affidavit at issue does not evince a minimal connection between the alleged criminal activity and the three cell phones discovered at the scene of the car crash. Thus, the appellate court erred in applying *Leon's* good-faith exception to the exclusionary rule." *Id.* ¶ 14.

{¶ 27} This case is factually distinct. The affidavit makes clear that in each instance of armed robbery, Franks knew Shields was using a cell phone. He was shown in each security video doing so. The warrant did not request a search of the device itself, but rather location data to reveal the name of the individual present at all three robberies. This is a detail clearly related to the crimes as the location data is evidence that Shields was the individual using the cell phone seen in each of the security videos.

{¶ 28} The trial court's biggest concerns appeared to be that the geographical area of the search was too large, approximately "12 acres," and failed to limit the detective's discretion to obtain the account holder's information without first returning to the court to justify and request de-anonymization of the device tags. Judgment entry 23-24.

{¶ 29} Regarding the size of the search area, it is not evident from the record that the application requested an area bigger than necessary. It may well be that the technical limits or manner of record keeping supports this large of an area. On the other hand, the necessary step of de-anonymizing the data was done without clear guidance from the warrant. So, the issue of whether in that regard the warrant facially permitted an overly

broad search is indeed a closer call. *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3d 638; State v. Hikec, 5th Dist. App, No. 2023 CA 00018, 2024-Ohio-1940, See also*, Horton v. California*, 496 U.S. 128, 140, 110 S.Ct. 2301 (1990) ("If the scope of [a] search exceeds that permitted by the terms of a validly issued warrant * * * the subsequent seizure is unconstitutional without more." )[1]

{¶ 30} Even if we were to assume for the sake of argument that either or both these issues invalidate the warrant, for the reasons outlined above, we would still find the good-faith exception applicable to this situation.

{¶ 31} The first assignment of error is overruled.

II

{¶ 32} In his second assignment of error, Shield argues that because the geofence warrant was an illegal warrant, the fruit of the poisonous tree doctrine applies to two subsequent warrants. Given our resolution of the first assignment of error, Shields' second assignment of error is moot.

{¶ 33} The judgment of the Delaware Court of Common Pleas is affirmed.


By King, J.,

Gwin, P.J. and

Wise, J. concur.

---

[1] In the event we were to find that the warrant facially complied with the twin directives of *Castagnola*, there remains the question of whether the search for the account holder's name was outside the scope of the warrant and thus unreasonable. *Horton*, 496 U.S. at 140. See also *United States v. Loera*, 923 F.3d 907, 917 (C.A. 10, 2019). This analysis is unnecessary because of our conclusion the good-faith exception applies.