[Cite as *State v. Hikec*, 2024-Ohio-1940.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO | : | | JUDGES: |
| | : | | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | | Hon. Craig R. Baldwin, J. |
| | : | | Hon. Andrew J. King, J. |
| -vs- | : | | |
| | : | | |
| JASON THOMAS HIKEC | : | | Case No. 2023 CA 00018 |
| | : | | |
| Defendant-Appellant | : | | O P I N I O N |


CHARACTER OF PROCEEDING:     Appeal from the Court of Common
Pleas, Case No. 22-CR-183


JUDGMENT:     Affirmed


DATE OF JUDGMENT:     May 20, 2024


APPEARANCES:

For Plaintiff-Appellee

R. KYLE WITT
239 West Main Street
Suite 101
Lancaster, OH  43130

For Defendant-Appellant

SCOTT WOOD
120 East Main Street
Suite 200
Lancaster, OH  43130

*King, J.*

{¶1}    Defendant-appellant, Jason Thomas Hikec, appeals the March 24, 2023 judgment entry of the Court of Common Pleas of Fairfield County, Ohio, denying his motion to suppress evidence obtained as the result of a search for digital evidence on his cell phone.  Plaintiff-appellee is the state of Ohio.  We disagree with the trial court, but affirm the convictions.

FACTS AND PROCEDURAL HISTORY

{¶2}    On April 27, 2022, the victim, S.W., reported to police that her ex-boyfriend, Hikec, held her against her will and physically assaulted her on April 26, 2022.  The alleged incident occurred in an unattached garage adjacent to an apartment she had shared with Hikec.  S.W. had moved out of the residence approximately two weeks prior, but had gone back to retrieve her mail.  S.W. told police she had been physically assaulted and threatened by Hikec in the past during the course of their one and one-half year relationship.

{¶3}    S.W. stated upon her arrival, she knocked on the garage door and Hikec answered the door and let her in.  Hikec was on the phone, but hung up and yelled at S.W. for meddling in his business.  As she began to respond, Hikec lunged at her and head-butted her.  He proceeded to head-butt her, punch her a few times on the side of her head, her thigh, and her ribs, cover her mouth, and grab her head and bash it on the concrete floor a couple of times.  S.W. attempted to leave the garage, but Hikec told her to follow him to the apartment so she could clean herself up.  Hikec took her cell phone and left her in the bathroom.  S.W. noticed one of Hikec's security cameras showed that he was back in the garage.  She went out the back door, got into her vehicle, and drove

home. During her statement to law enforcement, S.W. told the officers Hikec kept methamphetamine and guns on his property.

{¶4} A search warrant for Hikec's residence and surrounding property ("residence warrant") was issued, and he was interviewed at the police department. Hikec stated he was able to view his surveillance camera footage from his cellular device. He provided his cell phone to the investigating officer, as well as his password, and the officer placed the cell phone into an evidence bag. Based upon the possibility that Hikec's cell phone contained digital evidence related to the case, police officers requested a second search warrant to search Hikec's cell phone ("cell phone warrant").

{¶5} The affidavit submitted in support of the request for the cell phone warrant was executed by Detective Kurt A. Humbert of the Lancaster Police Department, and sought the following in relevant part:

**Person and/or Place of:** Blue Apple iPhone currently stored at the Lancaster Police Department evidence room, 130 South Broad Street, Lancaster, Fairfield County, Ohio 43130. The passcode on the device is believed to be XXXXXX887. (Full passcode omitted.)

_____

**Property which is subject to search and seizure, to-wit:** Any present or historical data including, but not limited to: SMS messaging data, incoming/outgoing call data, call duration data, video data, call history data, data reflecting communication to and from the phone, data reflecting media recorded by the phone, and contact data. The search and seizure are not

limited to data currently accessible, but also data accessible in a recoverable fashion via computer devices (i.e. deleted data).

{¶6} Detective Humbert's affidavit listed the offenses of felonious assault in violation of R.C. 2903.11 and domestic violence in violation of R.C. 2919.25, and set forth the facts summarized above, as the foundation upon which he based his request for the cell phone search warrant.

{¶7} The cell phone warrant was issued and authorized law enforcement officers to search Hikec's cell phone for "[a]ny present or historical data including, but not limited to: SMS messaging data, incoming/outgoing call data, call duration data, video data, call history data, data reflecting communication to and from the phone, data reflecting media recorded by the phone, and contact data." Further, the warrant included both data currently on the cell phone and deleted data. The cell phone was sent to the Ohio State Highway Patrol Computer Crimes Lab for extraction. During the search of the cell phone, law enforcement officers discovered text messages relating to Hikec's ownership of guns.

{¶8} On May 5, 2022, the Fairfield County Grand Jury indicted Hikec on one count of felonious assault in violation of R.C. 2903.11, two counts of aggravated possession of drugs in violation of R.C. 2925.11, and two counts of having weapons while under disability in violation of R.C. 2923.13. Hikec was also indicted with firearm and forfeiture specifications. An amended indictment was filed on March 22, 2023, to make specific fact changes; the charges remained the same.

{¶9} On March 23, 2023, Hikec filed a motion to suppress any digital evidence referring to guns and drugs obtained from his cell phone, claiming the warrant was overly

broad and lacked the specificity and particularity required by the Fourth Amendment. By judgment entry filed March 24, 2023, the trial court denied the motion, finding it need not determine whether the warrant was overbroad because the good faith exception to the exclusionary rule applied to allow for admission of the digital evidence from the cell phone.

{¶10} A jury trial commenced on March 28, 2023. During trial, Hikec objected to the admission of text messages referencing guns obtained from his cell phone, arguing the evidence should be excluded pursuant to Evid.R. 404(B) as inappropriate propensity evidence. The trial court denied the objections, finding the text messages were admissible because they were directly related to the having weapons while under disability counts, as well as the firearm specification. The trial court found the text messages, in which Hikec stated his desire to pick up his guns, emphasized his ownership of firearms two weeks prior to the date of the incident giving rise to the charges, and was therefore relevant to the issue of whether he owned or possessed the guns at the time of offenses. The trial court issued a limiting instruction to the jury, informing the jury that any text messages containing references to guns, purportedly sent by Hikec, did not constitute direct evidence that he owned or possessed any one or more of the specific firearms he is alleged to have owned or possessed on the dates alleged in the indictment.

{¶11} Following deliberation, the jury found Hikec guilty on all counts and the attendant specifications. By judgment entry of sentence filed April 21, 2023, the trial court sentenced Hikec to an aggregate definite term of 11 years and an aggregate indefinite term of 13½ years in prison.

{¶12} Hikec filed an appeal with the following assignments of error:

I

{¶13} "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS TEXT MESSAGES RETRIEVED FROM APPELLANT'S CELL PHONE."

II

{¶14} "THE TRIAL COURT ERRED IN ADMITTING TEXT MESSAGES RETRIEVED FROM APPELLANT'S CELL PHONE IN VIOLATION OF EVIDENCE RULE 404(B)."

I

{¶15} In his first assignment of error, Hikec claims the trial court erred in denying his motion to suppress the digital evidence obtained through law enforcement's execution of the cell phone warrant. We agree.

{¶16} As stated by the Supreme Court of Ohio in *State v. Leak,* 145 Ohio St.3d 165, 2016-Ohio-154, 47 N.E.3d 821, ¶ 12:

"Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside,* 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. In ruling on a motion to suppress, "the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.,* citing *State v. Mills,* 62 Ohio St.3d 357, 366, 582 N.E.2d 972 (1992). On appeal, we "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id.,* citing *State v. Fanning,* 1 Ohio St.3d 19, 20, 437 N.E.2d 583 (1982). Accepting those facts as true, we must then

"independently determine as a matter of law, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Id.*

{¶17} That is, the application of the law to the trial court's findings of fact is subject to a de novo standard of review. *Ornelas v. United States,* 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)*.* Moreover, due weight should be given "to inferences drawn from those facts by resident judges and local law enforcement officers." *Id.* at 698.

{¶18} Hikec argues the search warrant at issue lacks the particularity required by the Fourth Amendment as set forth by the Supreme Court of Ohio in *State v. Castagnola*, 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3 638. *Castagnola* reviewed a search warrant seeking to search the files on a computer. The warrant sought "records and documents" stored on a number of digital devices. *Id.* at ¶ 76. In finding the warrant invalid, the Supreme Court held the purpose of the particularity requirement was to guide and control the judgment of the seizing officer and to avoid overly broad seizures. *Id.* at ¶ 79. In its consideration of the warrant against the Constitution's particularity requirement, it held the warrant did not guide or control the analyst's discretion as to what was to be seized on the computer, allowing the analyst to look at all the evidence on the hard drive to determine what to seize. *Id.* at ¶ 83.

{¶19} Next, the court found the broad language of the warrant included items that were not subject to seizure. *Id.* at ¶ 84. The state argued " 'nothing in the record suggests that the police knew ahead of time precisely where or on which devices those items were stored.' " *Id.* at ¶ 85. The court held the particularity issue did not relate "to where the

information was stored but rather 'what' evidence the detective had a fair probability of believing existed" on the computer. *Id.* The court determined the search warrant lacked particularity and was therefore invalid. *Id.* at ¶ 90.

{¶20} Ten months prior to *Castagnola,* the Supreme Court of the United States released its opinion in *Riley v. California*, 573 U.S. 373, 134 S.Ct. 2473, 189 L.Ed.2d 430 (2014), a case reviewing the warrantless search of a cell phone incident to an arrest on a traffic violation. Police officers searched through the defendant's cell phone and found evidence of gang activity and he was subsequently charged with additional offenses. The court observed, "[c]ell phones differ in both a quantitative and a qualitative sense from other objects that might be kept on an arrestee's person. The term 'cell phone' is itself misleading shorthand; many of these devices are in fact minicomputers that also happen to have the capacity to be used as a telephone." *Id.*at 393.

{¶21} The Supreme Court of the United States was explicit in its concern that "the possible intrusion on privacy is not physically limited in the same way when it comes to cell phones." *Id.* at 394. From this, the Supreme Court made three specific observations about the storage capacity of cell phones. First, cell phones contain a wide variety of types of data, e.g., video, bank statements, and medical prescriptions. *Id.* Second, the quality of data on cell phones is deeper, more personal, and thus more intrusive; to make the point, the court compared physical photographs in an album to those with metadata on the phone. *Id.* Third, the court recognized that the quantity of personal and otherwise private data now carried on cell phones is well in excess of what was realistic and probable in a pre-digital physical world. *Id.* at 394-395.

{¶22} The Supreme Court's concerns about the depth of personal data contained on digital devices has only grown as the size of local storage has continued to expand and more so with additional capacity through cloud-based services. Similarly, many personal devices can now be accessed and operated through digital devices connected to the internet.

{¶23} In *State v. Grace*, 5th Dist. Fairfield No. 2022 CA 00039, 2023-Ohio-3781, this court discussed *Riley* and *Castagnola* in reviewing an overbroad warrant for the search of the defendant's Google and Gmail activity. Although not a physical cell phone search, the court noted: "The only discernable difference between the location of the digital evidence examined in *Riley* and that in the case at bar is the location of the data. In *Riley* the data was contained at least in part on a cell phone. In the case at bar, the location data was contained in the so-called 'Cloud,' i.e. computer servers or hard drives located elsewhere." *Grace* at ¶ 33.

{¶24} This court analyzed the language of the affidavit warrant and found because the warrant authorized collecting evidence before and after the date of the offense without explanation and authorized the search of any accounts associated with the defendant's email address, "the warrant more closely resembles the type of general warrant to search for evidence of a crime that our Founding Fathers condemned." *Grace* at ¶ 45. This court determined the affidavit lacked specificity or factual information to establish a minimal connection between the alleged offenses and the search of the Google/Gmail accounts and therefore the good faith exception to the exclusionary rule did not apply. *Id.* at ¶ 47. "To hold otherwise would allow bare-bones affidavits like the one at issue here to be used

time and time again in future investigations whenever one or more browser search histories, or Google accounts, are in the name of a suspect." *Id.*

{¶25}  The warrant in this case authorized the search of Hikec's cell phone for "any present or historical data," and the text messages and video used to further charge Hikec on the drug and gun charges were removed in time from the date of the offenses against S.W.  In its judgment entry denying Hikec's motion to suppress, the trial court found "it need not determine whether the warrant in this case was overbroad, as in any event the good faith exception to the exclusionary rule would apply."

{¶26}  We find the cell phone warrant was broadly worded and thus permitted a sweeping, comprehensive search of Hikec's cell phone with no meaningful limits on the discretion of law enforcement to search the cell phone.  Officers were investigating allegations of felonious assault and domestic violence.  S.W. told the officers Hikec possessed guns and drugs.  After obtaining Hikec's cell phone, the officers secured the cell phone warrant.  While the cell phone warrant specifically mentioned searching Hikec's SMS messaging data, it did not reference with any kind of particularity what information was sought, or make any references to searching the data for information regarding guns and/or drugs.  It permitted a search of all the information on the device and no meaningful limit on the officer's discretion.  Accordingly, the cell phone warrant failed to contain sufficient particularity with regard to the digital evidence regarding guns.

{¶27}  The digital evidence in question need not be excluded, however, if the good faith exception to the exclusionary rule applies.  "[T]he exclusionary rule should not be applied to suppress evidence obtained by police officers acting in objectively reasonable, good faith reliance on a search warrant issued by a detached and neutral magistrate but

ultimately found to be invalid."  *State v. Wilmoth,* 22 Ohio St.3d 251, 254, 490 N.E.2d 1236 (1986) [analyzing and adopting the "good faith exception" advanced in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984)].  *Accord State v. Schubert*, 171 Ohio St.3d 617, 2022-Ohio-4604, 219 N.E.3d 916, *reconsideration denied,* 168 Ohio St.3d 1515, 2022-Ohio-4809, 200 N.E.3d 296.  The question to consider is "whether a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization."  *Leon* at fn. 23.  "An affidavit is 'bare bones' when it fails to establish a minimally sufficient nexus between the item or place to be searched and the underlying illegal activity."  *Grace,* 2023-Ohio-3781, at ¶ 42, citing *Schubert, supra.*

{¶28}  In *Castagnola*, one of the reasons for rejecting the claim of good faith was because the warrant was "so facially deficient in failing to particularize the items to be searched for * * *."  *Castagnola,* 145 Ohio St.3d 1, 2015-Ohio-1565, 46 N.E.3 638, at ¶ 100.  The Supreme Court went on to disapprove of securing a warrant by way of layered inferences.  *Id.* at ¶101.  A situation similar to *Castagnola* was present in our previous case, *Grace, supra.*  And similar issues are present here.  Beyond that deficiency, the apparent basis for seizing and searching the cell phone for possible evidence on the cell phone was the possibility the assault was recorded by the garage security cameras.  This is the kind of inference disapproved of in *Castagnola.*  It may be true today that people text and take pictures of many things, and this often includes criminals texting about their crimes or memorializing their illicit conduct by way of video or photos.  But relying on that generalized inference appears improper under *Castagnola* or under our prior precedent of *Grace,* 2023-Ohio-3781, at ¶46-47.

{¶29} Any possible recording of the assault would have occurred on April 26, 2022. The objected to text messages were dated April 14, and 15, 2022, prior to any possible recording of the assault. In following *Castagnola* and *Grace,* the good faith exception does not apply in this case.

{¶30} Crim.R. 52(A) defines harmless error and states: "Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Under the harmless error standard of review, "the government bears the burden of demonstrating that the error did not affect the substantial rights of the defendant." *State v. Perry,* 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 15, *citing United States v. Olano,* 507 U.S. 725, 741, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

{¶31} In this case, the jury received a limiting instruction regarding the introduction of the incriminating text messages that were the result of the improper cell phone search. T. at 569-571. The court instructed the jury as follows in part (T. at 570):

> These messages, containing references to guns and a firearm, which were purportedly sent by the Defendant, do not constitute direct evidence that the Defendant owned or possessed any one or more of the specific firearms he is alleged to have owned or possessed on the dates alleged in the indictment. You are instructed by the Court, as an order of the Court, to not consider this evidence for that purpose.

{¶32} Presuming the jury followed the instruction, then the admission of the text messages is harmless. *See State v. Perez,* 124 Ohio St.3d 122, 2009-Ohio-6179, 920

N.E.2d 104, ¶ 103 ("The jury is presumed to follow the trial court's instructions"), and *State v. Davis*, 2015-Ohio-889, 31 N.E.3d 1204, ¶ 54 (5th Dist.) ("It is well-established that juries are presumed to follow and obey the limiting instructions given them by the trial court").

{¶33} Upon review, we find the cell phone warrant failed to contain sufficient particularity with regard to the digital evidence regarding offenses related to firearms, and the good faith exception to the exclusionary rule does not apply; but we find the error to be harmless given the trial court's limiting instruction to the jury.

{¶34} Assignment of Error I is granted, but the admission of the digital evidence from the cell phone was harmless.

II

{¶35} In his second assignment of error, Hikec claims the trial court erred in admitting the text messages referencing guns retrieved from his cell phone in violation of Evid.R. 404(B). We disagree.

{¶36} The admission or exclusion of evidence lies in a trial court's sound discretion "so long as such discretion is exercised in line with the rules of procedure and evidence." *Rigby v. Lake County*, 58 Ohio St.3d 269, 271, 569 N.E.2d 1056 (1991); *State v. Sage,* 31 Ohio St.3d 173, 510 N.E.2d 343 (1987). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough

that the reviewing court, were it deciding the issue *de novo,* would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶37} Hikec argues the admission of the text messages from his cell phone constitutes improper admission of "other acts evidence" in violation of Evid.R. 404(B) which states the following in pertinent part:

**(B) Other Crimes, Wrongs or Acts.**

(1) *Prohibited Uses.* Evidence of any other crime, wrong or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) *Permitted Uses; Notice.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

{¶38} In *State v. Hill,* 5th Dist. Stark No. 2018CA00077, 2019-Ohio-3432, this court addressed the admission of text messages in the context of Evid.R. 404(B) in which the trial court had admitted text messages which reflected a conversation regarding the sale of drugs. This court found it is "not necessary to exclude evidence of other conduct when 'the "other acts" form part of the immediate background of the * * * crime charged in the indictment.' " *Id.* at ¶ 50, quoting *State v. Curry*, 43 Ohio St.2d 66, 73, 330 N.E.2d 720 (1975). "When other acts are 'inextricably intertwined' with that offense, those acts are said to be intrinsic to the alleged crime. In other words, acts that are 'inextricably

intertwined' aid understanding by 'complet[ing] the story of the crime on trial.' " *Id.* at ¶ 52, quoting *United States v. Siegel*, 536 F.3d 306, 316 (4th Cir.2008). " 'Evidence of other crimes is admissible when evidence of the other crime is so blended or connected with the crime on trial as the proof of one crime incidentally involves the other crime, or explains the circumstances, or tends logically to prove any element of the crime charged.' " *Id.,* quoting *State v. Long*, 64 Ohio App.3d 615, 617, 582 N.E.2d 626 (9th Dist.1989). "Consequently, a court can admit evidence of other acts which form the immediate background of and which are inextricably related to an act which forms the foundation of the charged offense." *Id.* at ¶ 53, citing *State v. Lowe*, 69 Ohio St.3d 527, 531, 634 N.E.2d 616 (1994).

{¶39} In the instant case, the two text messages were highly probative of a question that was directly before the jury; that is, whether Hikec owned and/or possessed guns on the date(s) listed in the indictment. This fact was inextricably intertwined with the firearm specification to the aggravated possession of drugs charge and the having a weapon while under disability charges. Because of the inextricable intertwined nature of the text messages and the crimes for which Hikec was being tried, Evid.R. 404(B) did not preclude their admission.

{¶40} Upon review, we find the trial court did not abuse its discretion in allowing the text messages into evidence.

{¶41} Assignment of Error II is denied.

{¶42} The judgment of the Court of Common Pleas of Fairfield County, Ohio is hereby affirmed.

By King, J.

Hoffman, P.J. and

Baldwin, J. concur.

[Cite as *State v. Hikec*, 2024-Ohio-1940.]